Case number 17-6048 6260 6166 6213 6299 6333 David Samarripa et al. v. J Ray Ormond Warden. Argument not to exceed 20 minutes per side. Ms. Wellington, you may proceed. And I reserve two minutes for rebuttal. Sure. Good morning. Good morning. May it please the Court, Katie Wellington on behalf of petitioners. I wanted to start with the central legal issue in this case, which is whether Section 1915A grants courts authority to impose partial filing fees on habeas petitioners. The text of the statute does not grant courts that authority, and the structure of Section 1915 as a whole demonstrates that Congress explicitly considered whether to impose partial filing fees on prisoners and limited those fees to civil rights actions. Amicus has cited the greater includes the lesser principle to justify the imposition of partial filing fees. That principle is inconsistent with a textualist approach to statutory interpretation. It looks at the policy. So maybe let's just put greater, lesser to the side for a second, just bracket that. But in terms of textualist stuff, isn't it just silent in both directions? I mean, you could have clarified that there was no discretion. I think we would have to agree. You could have clarified there was discretion. I mean, you can imagine clarifying language in either direction, and it seems to me it's just silent. And then why not look whether it's maybe we can ignore greater, lesser. How about what everybody was doing before the statute? And that seemed to allow this flexibility. So two answers. The first is Congress has explicitly used the word partial fees and other statutes when it wanted to grant courts that authority. So Section 1915b1 explicitly uses the word partial, and the Criminal Justice Act, which talks about requiring litigants to make partial payment towards representation, also uses the word partial. So Congress certainly knew how to use the word partial when it wanted to grant courts authority to impose partial fees. With respect to the pre-PLRA precedents, those precedents are wrongly decided. Most of the cases rely on Brayden v. Estelle, which is a 1977 case out of the Southern District of Texas. That case reached its conclusion based on an analogy to the Criminal Justice Act, which, as I just mentioned, explicitly grants courts authority to require litigants to make partial payment towards representation. That is a faulty analogy. You know, we're not talking about jurisdiction of the federal courts. We're talking about authority, whether it's expressed or inherent or implied. But you seem to be saying that the federal courts have no authority to do anything, no inherent authority, no implied authority, unless it's specifically expressed by Congress. I mean, that's your position, right? So in 1904, in the Bradford case, the U.S. Supreme Court held that Section 1915 must be construed according to its terms and that the right to prosecute informa pauperis cannot be extended by implication beyond its terms. And the Supreme Court expressly rejected that common law notions of the authority of courts to permit litigation informa pauperis had been imported into the informa pauperis statute. So that Bradford case, the Supreme Court explicitly said that's not appropriate in the informa pauperis context. We have to look to the explicit terms. And indeed, in the Nassar case and in the Patsy case, the Supreme Court more recently has said that where Congress created a detailed statutory scheme specifically addressing the relevant question and went so far and no further, courts should not create judicial ad hoc rules that go that extra step. And that's what the district courts did here. They departed from the clear text of the statute, which says that partial filing fees are appropriate in civil cases filed by prisoners and took it a step further. I'd like to ask a question about, you just said that the Criminal Justice Act allows for partial filing fees, and I'd like you to tell me where that is. Sure. That's at 18 U.S.C., Section 3006A, and it's partial payment for representation, not fees. I am interested in how the Criminal Justice Act intersects with this, because if you look at 3006A.7, Proceedings Before Appellate Courts, it says if a person for whom counsel is appointed under this section, which could include a habeas petitioner, appeals to an appellate court or petitions for a writ of cert, he may do so without prepayment of fees and costs or security, therefore, and without filing the affidavit required by 1915A of Title 28. So I'm wondering whether that section of the CJA would exempt, how would that interact with 1915A or B? Does it just carve out everyone who's gotten appointed counsel through the CJA, or does it mean you go over to 1915 and then you have to go through the PLRA if the other side is right, or through 1915? How do these work together? So I'm not aware of precedent expressly addressing that issue. It sounds like that in that situation, a litigant might be accepted from submitting the affidavit because the court has already made a determination that that person cannot afford to pay for the cost of representation and may be permitted to proceed and form a papyrus. So my assumption would be that that more specific statute that's directly addressing the CJA situation would govern. But it specifically also says he may do so without the prepayment of fees and costs or security, therefore, and without filing an affidavit. So I'm just wondering whether this CJA provision just takes everything out. In other words, if you've got CJA counsel, which could happen in a habeas, then we don't need to worry about this. I just don't know how these two... So my assumption would be that the intention of that statute is to say, okay, once we've appointed counsel, we're not going to make that counsel jump through hoops to get and form a papyrus status. And so that would be my assumption that it would govern in that situation. Of course, petitioners here were proceeding pro se, so that statute would not apply to them and to many habeas petitioners. But just so I'm understanding, the point is if there's appointed counsel, we don't worry about any of this? That would be my initial take on that statute. The important thing to keep... I have a question about the context of the phrase without prepayment of fees. So it says without prepayment of fees in A1, and then it says or security, therefore. So I'm trying to imagine exactly what they're referring to there, but my instinct is that whatever they're referring to as security would involve quite a bit of discretion. So I think the discretion that's granted is the discretion to determine whether or not a litigant can pay the full filing fee, and needs to put up security to show that they can pay the full filing fee. Right. So I'm starting with the assumption that they make, because if you say no fee, you don't have to worry about security. So I'm starting with the all or nothing, and they say all, consistent with your position. If they're going to produce it, they've got to produce security, right? In a situation in which they're not excusing you, they're saying you have to pay all fees. That's your position, right? It's all or nothing. Here they're saying all. And for whatever reason, you can't come up with the actual cash, whatever it is, all $505 or something, and you then provide security. Isn't that what that means? I'm not sure if that's correct. I think the word security may have been an older reference to the security, for example, the entire cost of printing the record. So I'm not sure if that is actually in use right now with respect to the partial fees. But it says more security therefore. Therefore the fees. Even if you read that to include security, it's simply granting courts authority to determine whether or not someone has enough money for security. I agree with that 100 percent. But what I'm getting at is your position is that it's all or nothing at all with prepayment of fees. And then we get to the security therefore, and that by definition does not have an all or nothing at all component. It's solely discretionary. Is this bank account statement, is this car, whatever it is that you're using security sufficient? So that seems funny to me, something that has tons of discretion in connection with something that has no discretion. That's what I'm getting at. And I think your first answer is this is an artifact, and we shouldn't let it affect what without prepayment of fees means? Is that what I'm hearing? That's my first answer. My second answer is it's still, that's not granting courts authority to impose a partial filing fee. It's simply saying that where there's security that might be required, the court is making a judgment as to whether or not that security is sufficient. So just one other thing. So amicus has really argued that Kincaid's wrong. You've responded that no, it's right. And by the way, 2241 is arguably a separate point. If we think, let's just say hypothetically we think Kincaid is wrong. Shouldn't we take the view, let's not extend it to 2241? Or will that create administrative problems that I'm not seeing? So this court, it's up to you whether to extend it to 2241. Certainly the entire rationale of Kincaid is that habeas petitions should be treated in a certain way. Do you agree that Kincaid is not precedentially binding on this panel? This court explicitly reserved the question of how to apply the inform a papyrus statute to 2241. So to answer my question, you agree that this panel is not bound by Kincaid? Yes, I agree. But this court would have to deal with the fact that section 2241 is the general habeas corpus statute, and there is no basis for distinguishing. It would be inconsistent if we ruled against Kincaid, but that's why we've got the en banc court, isn't it? This court could go en banc to reconsider that issue if you thought it was appropriate. That's one of the functions of why we have an en banc court, is to reconcile inconsistent, illogical decisions, which I kind of agree with you. If we ruled 2241 is different than Kincaid, that the logic doesn't make any sense. But it seems to me that that's a perfect vehicle for en banc. That could certainly be a function for the en banc court. I think it is important to keep in mind the Fifth Circuit has taken the opposite view of the inform a papyrus statute and Rule 24. So if this court goes in that direction, it would create a split with the Fifth Circuit. If it's all right with the presiding judge, I also want to ask you a little bit more about sub B. There's a fee provision in the statute that talks about civil actions. In all civil actions, the filing fee will be $350. This is 1914 sub A, by the way, except that an application for a writ of habeas corpus, the filing fee shall be $5. So there they say civil actions, the fee is $350. And then they make an exception of civil actions for habeas. The exception, though, is to the rule. And that fee provision indicates to me, does it not, that habeas are civil actions. Why else would there be an exception to it? So two answers. The first is that provision is clearly distinguishing between civil actions and habeas actions. No, it says in all civil actions it's $350 except habeas. So they're saying this is the rule, and then this is the exception to the rule, and that implies that it is included in the general rule. So the second answer is you are distributing the word civil to suit or proceeding. You have a disjunctive or there, so typically you would not distribute civil to suit or proceeding. The word suit and proceeding certainly encompass habeas actions without implying that those actions are civil. Okay. All right. Thank you. So is there anything practically that is weird about having 2241 with one set of payment rules and 2254 and 2255 with another set of payment rules? In other words, I'm assuming, so this is different from Judge Griffin's point, which is that if we did a different rule for 2241, that might suggest we embank Kincaid. I'm actually trying to imagine a world in which Kincaid lives, but 2241 is treated differently. And I'm trying to figure out if that is administratively foolish. Like one reason it might be foolish is you might have lots of people just filing, the complaint mentions 2241 and 2254. Like they just do both, and now we have to figure out which payment system applies. But I'm just trying to work through whether you could have opposite systems or different systems for those two regimes. So I think this court would have to decide, are you going to take how a habeas petitioner labels their case? So in a lot of situations, habeas petitioners are saying this is a 2241 case when it's actually a 2255 case. So these cases are a good example of that. And so the court would have to make some kind of determination of what kind of action is this really, which would actually possibly require this court to address difficult issues, as this court did in Hill against Masters, with respect to when 2241 is available to habeas petitioners. So am I right to think that you think whatever we do, we should do the same thing for all three? I think that that makes sense if you look at what is a habeas action, what is the habeas statute. We can't overrule Kincaid. I mean, we're bound by Kincaid as to 2255. This court... Yeah, I mean, all we can do is say 2241 or treat it differently. This court could also look to Kincaid and agree with the reasoning in that case and say we're going to extend that to 2241 under the plain text of the statute. But if we decide Kincaid is wrongly decided, why would we extend a wrong precedent to another area that we're not required to extend? It doesn't make any sense. Certainly, this court is not required to extend Kincaid if it disagrees with it. Okay, well, did you save rebuttal? I did save two minutes for rebuttal. All right, good. Well, you'll get it. All right. Is it from Mr. Himelfarb? May it please the court, Edward Himelfarb with the Department of Justice. As we explained in our briefs, we are in agreement with pro bono counsel on the merits of the various arguments in substantial terms anyway. Anything that was said today that you disagree with? I don't think we disagree. I think that, for example, we do agree that all of the different kinds of habeas should be treated the same way. And since you're bound by Kincaid, I think you agree Kincaid is not precedentially binding on this panel? Well, it's binding in certain respects. Well, it says that habeas petitions are not civil actions for purposes of the PLRA, for example. That's binding, and it goes to one of the points I wanted to make quickly, which is that we hope the court is not going to undo settled precedent on various ways the PLRA is interpreted. For example, civil actions did not include habeas petitions for purposes of the PLRA. The PLRA has been in effect for roughly 23 years, and every time you start, you provide prisoners with a new legal issue. It has to get litigated for years and years before it's finally settled. Well, if the law is wrong, isn't it our obligation to correct it, even if it's been wrong for 22 years? I mean, that doesn't say, well, the wrong law has got to continue because we've applied it for 22 years erroneously. I mean, is that your argument? No, I agree with you in theory about that. Theory? But it's universal. All the circuits have held that habeas petitions are not civil actions for purposes of the fee-filing petition. I mean, there's a couple things that make one look a little more closely at this, right? So point number one is a lot of these decisions are not super carefully reasoned. That's pretty clear here. All this precedent, quite a few of them are pretty conclusory. We do have this textual point that it says brings a civil action or files an appeal, and appeal can refer to all kinds of things. And it's not obvious to me that a really critical premise of, I think, our decision and many others was this anxiety of having it spill over to the three strikes. And it seems to me the argument of using files and appeal gets rid of that problem. So in other words, what I think they were shooting at was a false target. It really does have you wondering. Now, I agree with you, a very good reason not to overrule precedent is expectations, reliance, interest, and we have something we're going to do with it. It's working relatively well, and that's something we have to work through in our own heads. But it does seem like some arguments that have been raised here have not really been addressed very carefully by these other courts. Well, Your Honor, I think... Including ours. If you look at the issue of files and appeal, whether that brings in, as the amicus suggests, every appeal, including habeas appeals and criminal appeals, you have a problem. I mean, the entire context of the PLRA is to deal with conditions of confinement, civil rights, and the like. And that's what we're trying to do. We're trying to deal with cases that are not habeas litigation and not habeas and certainly not criminal cases. But can the criminal case problem be solved by what I just read you from the Criminal Justice Act? Well, yeah, it might be. If you have appointed counsel, which is going to be the first appeal as of right for just about every indigent, I suppose there could be some misdemeanor cases that might be exempted from that. But just about every appeal as of right would be exempted under if that reading of the Criminal Justice Act is... Constitutional right to counsel in criminal cases. Right. But if you include it in the PLRA and it's not exempted, hypothetically, if it is exempted under the Criminal Justice Act, maybe we're okay. But if it's included in the PLRA and partial filing fees are permitted for criminal appellants, per se, then you're going to get all sorts of constitutional issues. But what is that fact pattern, given what Judge Larson just mentioned? You have the direct, you have the initial case with counsel. You have counsel on that direct appeal. So what's the problem? If it never happens, then it's not a problem. But we're concerned that it may happen and that courts, if the amicus's interpretation is correct, that courts are going to require filing fees under 1915. Which applies only to criminal appeals. But of course, maybe I'm wrong about this. Maybe you can clear this up. But the district judge here said, accepted the partial filing fee and said something about in full satisfaction. Yes. That doesn't really mean in full satisfaction. It just means in temporary satisfaction. In other words, we're always talking about prepayment of fees that can be collected at the back end as costs. Correct? Or does this mean... I think it means this is it. This is it. This is it. Theoretically, the prisoner could come into a lot of money during the course of the litigation. And then perhaps at that point, the court could turn around and say, you know, we granted you informal papyrus status at the beginning. And you had to pay only 300 out of the 505. But now you have all this extra money and we're going to make you pay the remaining. Theoretically, that's right. But usually what happens with costs on appeal is that the losing party pays costs. And if the prisoner is the losing party, the prisoner has paid the filing fee to the extent he's paid the filing fee. And so that really doesn't... It's not going to be taxed as costs to the prevailing party of the defendant because the defendant didn't pay the fee. What's this language security there for? Did you know what I was referring to when I said how it goes in A1 without prepayment of fees? I'm now shifting to the discretion point. And then it says or security therefore. And I guess what I'm... What do you think security therefore refers to? I just think it refers to security for payment of the fees. I assume that's what it refers to. I don't know whether it's ever been applied. It isn't security. I don't know whether it's been applied or not, Your Honor. It's that very discretionary is my point. Yes, but it's not the same kind of discretion. Security may be if the district court requires payment of the fee and temporarily waives it because you can provide security for that. You're providing security for the payment of the entire fee. That doesn't mean that you have discretion to say instead of $505, you're paying $300. Go ahead. There's definitely discretion involved in this. So what about someone who after this, you win. And the next order is the district court judge says, yeah, just give me $50. And as for the rest of it, I'll take a promise. That's the security there. I'm not sure I understood the first part of the hypothetical. Let's say you win. You win in the sense that it's all or nothing at all. The clever, savvy district court judge, maybe the one in this very case, says, okay, fine. I'm only going to ask you to produce $50 today. And as security therefore for the 505, I'll take a promise. That's all they do. What do you think is going to really happen there? They're not going to pay more than $50. So what have we done? Our position is the court doesn't have the authority to say pay $50 now and give security for the balance. Why not? It says or security therefore. It says whether you can waive prepayment of fees or security therefore. Doesn't it? No, it says without prepayment of fees or security therefore. Right. Tell me, maybe I'm missing your point. I thought what it meant is that if you're granted informer pauper status, you don't have to prepay the fees or provide security. Because if you're not granted informer paupers and you have to pay the fees, perhaps you can come in with security for the fees instead. So you still have the all or nothing situation. In the all situation, you might be temporarily exempted from paying the actual fee, but you can provide security for it. But you would not end up with a partial fee at that point. You would end up with a full fee still. But practically speaking, doesn't it become a partial fee? Security could be a partial fee. In other words, you only ask him to produce 50 in cash at that moment. And the remaining 455 is a promise. That's right. And whether it's enforceable or not is a different issue. Whether it's legally required is what we're arguing. In a situation like that, when you're on the hook for the entire fee, if you provide security in the form of $50, you're still liable for the entire fee. The judge is not saying $50 is it, we're not requiring any more. That would be a partial filing fee. What we're saying is that you're still liable for the full 500. Do you agree the phrase security or the term security includes a lot of discretion? Well, I think the whole statute includes a lot of discretion. It's just not the kind of discretion that the amicus is suggesting. Okay. All right. If there are no further questions. All right. Thank you. Appreciate it. Thank you. Thank you, Judge Sutton, and may it please the court. A long-settled principle resolves this case. When the text of a statute is clear, the judicial inquiry ends where it begins. The text of this statute is clear. It covers all prisoners who appeal in form of papyrus. I'd like to start by going to Judge Larson's point about the Criminal Justice Act. That really seems to be the driving force behind my friends on the other side's argument is that what about criminal appellants? The Criminal Justice Act solves that problem completely. Almost every single criminal appellant in the country appeals for free without needing to rely on 1915 at all because of the Criminal Justice Act. It's subsection D7 of 18 U.S.C. 3006A, exactly what Your Honor, Judge Larson read, and it allows a prisoner who's represented by counsel under the CJA to appeal for free, again, without needing to rely on 1950. So the way that works is that B1, when it says files and appeal, does pick up everything, but one of the everythings is fixed elsewhere. That's your way of thinking about it? Yes, Your Honor. So they really were thinking about criminal appeals when they did this? Absolutely they were, and we know that from B3 and B4 in 1915. They mentioned criminal appellants paying that initial partial filing fee, so we know they wanted to pick up all kinds of appeals. The nice thing is most criminal appellants, and it's basically all criminal— Some of the references start with in no event, so I don't know. In no event, I think reading the whole thing, it basically says in no event shall the criminal appellants or civil appellants who pay the initial partial filing fee that we just talked about in B1, in no event do they have to do this or that if these conditions are met. Did the district courts below rely on B1 in the orders? No, Your Honor, and that's— So if they did not rely on B1, why do we decide it on appeal? Because it's mandatory, so I think this court— It's mandatory, right? So if the partial fees are allowable under A, why do we even go to B1? Well, B1 starts with notwithstanding A. So B1, and then it says the district court shall assess the full fees as set out in B if B is met. It's not jurisdictional, but you're making the point this argument was raised below and rejected? Or what do you—when you say it's mandatory, what do you mean? You don't mean jurisdictional. No, I don't mean jurisdictional, of course. What I mean is that the district courts were required to impose these full fees under Subsection B, and this court, now that the argument's presented to it, should require them to do so. But if they didn't—okay, if B was not raised below and— He wants to say it can be forfeited. Not reserved. It seems like it's forfeited. I understand that. It's raised on appeal, and they say it's a really interesting argument. But I'm thinking, well, the district courts relied on A, and if A is correctly decided and resolves the case, why do we have to do B? So here's my answer to that, Your Honor. So really two points. First, it's definitely not waived. In other words, the government didn't—down below, the government didn't file a brief at all. So at most, it's forfeited. Yeah, well, forfeited issues aren't usually decided on appeal. Well, the court has the discretion to decide that issue. I know. We can issue advisory opinions all we want. But it's not—I'm sorry. Would you consider this to be an advisory opinion? No, Your Honor. We invited, appointed counsel to argue both sides, and it's now been fully briefed. In fact, he's tempted to say we forfeited it and don't do it because we asked him to brief it. How can we possibly— And I really think the court should get the law right under B. Even though we appoint you and ask you to brief five issues, I mean, that's nice, but it doesn't mean we have to decide all five issues just because you did all the work. Of course. And actually, you know, the way of judging, we usually decide cases on the narrowest grounds possible, at least a lot of good judges do. And the broader the ruling, often we get into mistakes, and the narrowest ruling is often the way to go. And, I mean, I'm kind of going in here thinking that you went on A, and B is a little more problematic for you. And I know everybody wants us to resolve B, but I'm just not sure we have to, that's all. So, Your Honor, I'll say a few things to that. First, I agree that I have the better reading of A, so we agree on that. Second, though, I don't think it's necessarily narrower or broader to go on B. And I think the third and most important point is that B is what district courts shall do. So A is discretionary. Even when they're not asked. Well, Your Honor, I think most of these are processed without any adversarial briefing below. So I think what typically happens is that there's a motion filed by the, I guess, habeas petitioner at that point, the soon-to-be appellant, and the federal government doesn't ever come in and have adversarial briefing. So the district court is left with just one motion from one side and has to decide this issue by itself. And I think this gets to, I mean, let's just say for the sake of argument you're right about B. You say we have authority to do this and, quote, we should fix it. But that would involve whether there's a way for us to deal with Kincaid or the embanked court to deal with Kincaid. When you think about those issues, you're supposed to pay attention to a bunch of other questions, not just whether it was right. The whole premise of stereodicysis is that it was wrong. So you start with that it's wrong, but that doesn't tell you what to do next. And there's a very big problem with your suggestion about what to do next, which is that we have a fairly settled system. I mean, these are going to be called Jim Saywell motions across the country. Clerk's offices, prison wardens, who is this guy? How did this happen? I think you might say Judge Sutton ordered me to bring this. Is this really worth it to upset the system? And it's working. It's not terrible. Well, I mean, the public is burdened with some more fees. I agree. It's not terrible, but it is a problem.  But, Judge Sutton, I think I can help you with this upsetting the apple cart point. By holding the files and appeal covers all appeals, and you won't upset the apple cart much at all. Kincaid remains on the books entirely, and you could even extend Kincaid to 2241 habeas actions if you wanted to. And the files and appeal will avoid the three strikes rule, as Your Honor pointed out. So I don't think it can remain entirely intact. And it's just when the files and appeal, that part of the case, when someone files an appeal, they must pay the full filing fee. That point, by the way, in Kincaid was not raised at all. And so it's not precedent at all, as I think the parties recognize. Are you saying the fee in Kincaid was a trial level fee? No, the fee was an appellate fee. But I read the briefs yesterday, and I think they're now on the docket. And the federal government in that case agreed that the statute applied only to civil appeals. So that issue was not in the case at all. But it's in the holding of Kincaid, isn't it? I mean, even though it wasn't properly argued and raised, but if you read the decision, it applies to the appeals too, doesn't it? So it is the classic issue that passes without being raised or without being considered. But is it in the holding, though? It's not the holding. And if it is a holding, it's a drive-by holding, which has no precedential effect. Your Honor, I encourage you. What's a drive-by holding? A drive-by holding is one that's neither considered nor presented to the court. In fact, the— Even if it's not presented to the court, the court says, we hereby hold the fouling. We have to foul it. Well, the court did not hold the we hereby hold— You can't dismiss it by, well, it's drive-by. I mean, it's— Well, we'll sort that out. But just one other thing. I'm not sure you've answered this one. What's your thought about the point I raised earlier with your friends that 22— In other words, keep the Kincaid regime but not extend it to 2241, which is one of the things you've argued. Yeah. And aren't you anxious about that implementation problem? Because you'll have two different things. You mentioned 2241 and 2254 in the petition, which pro se, not implausible. So now they're stuck which regime applies. Or the point that Ms. Wellington made that you might have a characterization problem, which we know we don't want to be doing, right? So what would— Does that suggest we have to go all one way or all the other or no? Maybe I'm not understanding what you said. No, I think— So, again, this is about the civil part of the case. So this is if the court— I think the easiest way to resolve the case is, say, files an appeal, applies to all appeals, and we don't even mention Kincaid because you don't need to. But if you want to talk about— That's just because of your recent conversation with Judge Griffin. That's because of the holding point. No, that's always been my point. That's the easiest way to resolve the case is to hold that files an appeal does not apply—does not— I thought it required us to revisit Kincaid. It does not. It does not require you to revisit Kincaid at all. I encourage you to read the briefs in Kincaid. They just arrived, I think, yesterday. And the government agrees that only civil appeals are covered. So they conceded that point. That point is now fully presented, and it's not precedent. It's the classic issue that lurks in the record without being raised or decided from Webster v. Fall. This court has applied that. Judge Griffin, you've applied that exact rule in King v. Taylor, for example, where you say an issue that wasn't presented doesn't count as precedent. That's like footnote five of King v. Taylor. So that's the easiest way. But, Judge Sutton, I want to help you. For 20 years, we've been applying it differently. I mean, if we were to bring all the clerk's offices and all the people in the prisons that are implementing this, they would say, well, that's not what we're doing. Aren't I likely right about that? I think you are, Judge Sutton. So let me help you with what I see happening post—after this case. So I do think that there would be some tension between this potential holding and Kincaid. And it might well happen that the court will, in a future case, need to clarify this panel's decision versus Kincaid. So I do think that that's a potential conflict, not just for the administrative reasons that you set out, but also because, as Judge Griffin recognized, they are a little bit logically in tension if this court doesn't extend Kincaid, but instead holds that habeas 2241 is not— Well, it would be logically inconsistent, would it not? I mean, is there a way to distinguish on this issue 2241 petitions from 2255? And if so, what is the logical distinguishing characteristics that would have us treat one differently than the other? So, Your Honor, there is a way to distinguish. The reason I didn't is because in this type of 2241, which is brought under the 2255 saving clause, which this court's precedent Hill v. Masters allow, there really is no difference. So that's why I didn't raise it, because it wouldn't even apply in this case. The quintessential 2241— It doesn't apply to this case.  Exactly, Your Honor. As opposed to potential theoretical other cases that could come before us. Exactly, which is— I think you just answered your question. There's no logical way. I did, and that's exactly how I wanted to answer your question. I'm sure I'm missing something, but just correct me quickly on this. If you get what you want, am I right that we have a situation where one of these five individuals appealed because they didn't want to pay 50 bucks? They thought they should pay zero, and they're going to come away with having to pay 505? That's right, over time. But over time, right? They didn't think that was a possibility when they appealed. Well, I actually want to make two points, if I could. What Judge Larson said is exactly correct. It's always prepayment, so they're always on the hook. Weaver v. Tombs from this court says that. It says that it's always postponement of fees, I think is what Weaver v. Tombs says. There's no cross-appeal here. I don't think they can be required to pay more unless there's a cross-appeal. So, Your Honor, I think what answers that question is they're not being required to pay more. They're being required to pay more up front. They have to always pay the 505. That's a debt that they'll always have. If you look at the practicality of it, unless there's a cross-appeal, you cannot— excess of what they're required to do right now unless there's a cross— that's the whole point of a cross-appeal. Right, but there's no enlargement. But arguably what the district judge did here by saying in full satisfaction was contrary to the statute because it really is—the statute says prepayment. So in theory, they're just two different regimes for collecting at the back end. And in fact, if the statute were actually followed, it could be that a district judge could cut the fee in half, $250 up front. But you still have to pay the 255 over time. Under the PLRA, you pay 20% of your prisoner account up front. You're paying less up front in some circumstances. It's possible. In these circumstances. So three of the five here have about— I was scratching my head going, why are we so— I mean, they're both prepayment regimes under the statute, maybe not as effectuated in practice. So I was kind of wondering why are—why do we care so much? Like they're both— Well, I care. We're coming at you one way or the other. But apparently we don't actually come at you is the answer I got from the government. It does seem like an enlargement. What's the response to Judge Griffin's point? I get the math point, but it's an enlargement in the sense that the judgment immediately requires something that was not required and may not have—who knows what was going to happen down the end. Well, two points. One, the judgment actually will—it will diminish the amount that they pay up front. So the 1,000—three of the five have about $1,000 coming in every month or as their prison balance. So that's going to be $200 instead of what they were required to pay, which is $400 or $350. No, one of them was $50. Two of them were $50. Right, but they have a lot less coming in per month. And actually that person, I forget exactly who that is, but that person will pay less up front as well. So it's actually a diminishment at first, and then it's not an enlargement ever because they're always on the hook for the 505. So you're saying they really would have won? Would have won what? Did they really win? If we go your route, did they win? I don't think they win if they go this route. But you know what does win is the law in Congress wins because Congress passed this statute and it's not being followed, and this court has the opportunity to make Congress follow or to make the law correct. And really I don't want to leave this point without pointing out that they concede that Kincade does not govern Judge Griffin. So even though I understand Your Honor is skeptical of that, that was a concession. As to 2241. As to 2241, right. So if I could, unless the court has further questions on the subsection B point, if I could spend a few minutes on the subsection A point. So I think what the parties do, and you heard it at argument today, they say that the discretion in A is only the discretion to determine the amount, rather to determine whether someone is indigent, to determine whether someone can afford to pay the filing fee. If that were true, this would not be a may-authorized statute. This would be a shall-authorized statute. And there are shall-authorized statutes in the U.S. Code. That's the kind of discretion that's at issue in those cases. One was at the Supreme Court last year in ISTIS. I think it's 18 U.S.C. 3599. It's a shall-authorized. It's if the district court finds that someone cannot afford to pay for the investigation or to pay the filing fee, then it shall authorize. That's what the parties turn this statute into. This is a may-authorized statute, which comes with the discretion to impose all or some, but not all. I think the best way to think about this is to think about a statute, and there are over 100 in the U.S. Code, that allow a prevailing party to receive costs, even full costs. One is at issue in a Supreme Court case from two weeks ago, Romini Street v. Oracle. I think it's 17 U.S.C. 505. It says that the district court may award full costs to the prevailing party. Under that kind of statute, which is a parallel to this kind of statute, no court in the country has questioned whether that's an all or nothing. Of course it's not. A district court can award full costs, up to full costs, or it can award, say, 10% of costs. This court in published opinions has affirmed on an abuse of discretion review an award of 10% of costs. And in the same way that that's an up to full costs, this is a down to zero. It is a statute that gives the district court the discretion to waive all or the discretion to waive some. But you don't really mean waive. You mean waive prepayment. Correct. Which I'm going to maybe talk to the other side about again. Yeah, and so I think the way to... Waive prepayment and get you on the back end. It's in full satisfaction of your prepayment obligations is how I would think about that. Otherwise, I do think it violates the statute. So I actually do want to make one more point, unless the court has questions. They cited a case that says Congress has to expressly authorize such discretion. Do you think this is the expressed authorization of the discretion? Do you think that satisfies? I can't remember the name of the case. It's Bradford and I do, Your Honor. It satisfies Bradford. It does, absolutely. So Bradford's a case where the appellate court tried to waive prepayment and the appeals wasn't even in the statute at that point. So the appellate court was not allowed to authorize anything and it went on and did. This case, no one doubts that all courts may waive prepayment. It's expressly in A1 now because Congress has really amended the statute many times. So all we're doing here is interpreting that may authorize phrase. That was not an issue in Bradford, so Bradford is distinguishable. The final point I'd make is this idea that the PLRA subsection B abrogated the pre-PLRA case law. That is an argument that the PLRA was in a repeal by implication and those are, as the court knows, highly disfavored. They only will happen if there's irreconcilable conflict between the two provisions. And B and A, far from being an irreconcilable conflict, work perfectly hand-in-hand and side-by-side. The subsection B is the mandatory regime and if you don't fall within the mandatory regime, you go right into the discretionary regime, which one way or the other, the partial filing fees were proper on these five prisoners. Go ahead. One other question. So you rest a lot on B3 and 4, which refer to criminal judgments, appealing a civil or criminal judgment, to make the point that appeals must include habeas actions and all appeals. And then you tell us don't worry about the actual criminal appeals because of the CJA. So what are the appeals that Congress is thinking about? What are the criminal appeals that are covered by the PLRA on your reading? Is that even a set? It's not a null set. It's not a null set. It's a very small set and the answer is it's misdemeanor. So the CJA subsection A1 does not cover misdemeanors, at least certain kinds of misdemeanors. And there has been a misdemeanant go all the way up to the Supreme Court IFP. So that's at least one possibility. And then the other possibility is someone can try to shoehorn into 1915 if they're denied under the CJA. That's going to be unlikely because the chances of you not being able to afford counsel but not, yeah, exactly, Your Honor. So those are the two possibilities. So it's not a null set. All right. Thank you. Well, we appreciate it. Thank you for taking this case too, by the way. We appreciate your efforts. I was happy to. Thank you. That's outstanding. Thank you. Thank you. Ms. Wellington, you've got a few minutes. So I wanted to go back to the text of Section 1915A and just point out that the words fees and security are used in two places in that provision. First, in the phrase without prepayment of fees or security, and second in the phrase unable to pay such fees or give security. Now, of course, that second reference is to the affidavit that a litigant has to file. A litigant doesn't know what kind of partial fee is going to be imposed on them. That second use suggests that a litigant files an affidavit saying, I can't pay the entire fee. I can't give security for the entire fee. And then courts determine whether or not the litigant can pay that same fee. Why? It says such. I'm not sure why it cuts one way or the other. I don't think it hurts you, but I'm not sure why it favors you. So the affidavit has to be filed before the court rules. So the only thing a litigant can say is that I can't pay the entire fee. Right, and the district court judge looks at this and says, I get part of what you're saying, but I don't agree in full, and they grant in part. Well, I think it's because the such fees and the word fees, it's the same fee. It's the total fee. And if you go all the way back to the 1892 statute, it does use the phrase the costs and the phrase give security for the same. So if you go all the way back, I think it's clear Congress was referring to the total costs. Well, I'll give you a chance to make your thing, I had not thought about this back end May statutes about costs. Is he correct? Because it sounded correct to me that when you assess costs, it isn't all or nothing at all. And so you have lots of statutes that say May assess costs, and that's quite discretionary at the back end. And isn't that suggestive of discretion at the front end, particularly since they often are interrelated? How do you respond to that? Certainly that hasn't been briefed. That's why it caught my attention. I hadn't thought of it. Didn't it catch your attention? So certainly we're looking at the text of this statute, which is talking about the discretion to determine whether a litigant can pay the entire fee. So to the extent that there are other statutes addressing costs that may grant broader discretion, that's not the text of this statute. The second point I wanted to make is that we certainly have not conceded the appeal point with respect to all appeals. So Kincaid explicitly states that the fee requirements of the PLRA do not apply to cases or appeals brought under Section 2254 and 2255. So this Court certainly has made a ruling with respect to appeals in 2254 and 2255 cases. The third point I wanted to make is the CJA issue also hasn't been briefed. There may be situations where the CJA doesn't apply, such as where a prisoner waives CJA counsel. Maybe there are other exceptions that could be problematic. And the fourth issue I wanted to raise is simply, if this Court allows the imposition of partial filing fees on habeas petitioners, it is sanctioning the creation of an ad hoc judicial scheme that is not provided for in the text of the statute. And this Court will have a lot of decisions to make. So if you go back to the pre-PLRA era, the Eighth Circuit in Williamson said Christmas gifts should be excluded when calculating how many assets a prisoner has. In the Wideman case, the District of Nevada case that's cited in the briefs, it talked about how courts had to publish entire orders, talking about fee schedules. The harder you make A-1 look, the more it tempts me to go to B-1. Well, I think that B-1 clearly does not apply. That's a very established regime is the point I'm making. Everybody knows how to implement that. But then this Court would be taking an established regime that Congress explicitly decided not to apply in habeas cases and apply it in habeas cases. That's exactly what the Supreme Court said was inappropriate in the Patsey case. It said it was inappropriate for courts to take the exhaustion regime that Congress had limited to prisoner suits and extend it to all Section 1983 cases even if that made sense as a policy matter. But if the Court has discretion and the regime of another statute makes sense, why would it be an abuse of discretion to look at some other statute that actually has a rule? Is that rational, reasonable structure to it? So I think the question is when Congress adopted this detailed scheme, considered explicitly the issue of partial filing fees paid by prisoners, at the same time in AEDPA explicitly considered whether and how to decrease frivolous and unmeritorious habeas filings and declined to do that, this Court should follow the statute that Congress wrote and not invent its own. All right. Thank you. All right. Thank you to all three of you for your helpful briefs and arguments. I think at the time the last round of briefs were filed, all three of you were working for free, if I'm remembering correctly. So thank you, Mr. Himmelfarb and Ms. Wellington. These clients are very lucky to have you for your work, so it's really important. And Mr. Saywell, thank you so much for complicating the case even more with all of your excellent arguments. We really appreciate it. It's really helpful to us, and we're really grateful. So thanks to all three of you. The case will be submitted, and the clerk may call the next case.